UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

JEFFREY A. BENDER
      PLAINTIFF,

    v.

PAUL H. FENIMORE, GARY K.
MCLARRY and HOPKINS COUNTY,
TEXAS.
      DEFENDANTS.

CIVIL ACTION

No.: _____

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW JEFFREY BENDER, Plaintiff, and brings this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343, inclusive of 1343(3) and 1343(4) to vindicate his right to be free from unreasonable seizure, false arrest and the use of excessive force as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution and files this, his Original Complaint. Plaintiff further invokes the pendent jurisdiction of this Court to entertain claims arising under state law, in particular, that of false imprisonment.

## JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over Plaintiff's federal claims under 42 U.S.C.

§ 1983 and original jurisdiction based upon 28 U.S.C. §§ 1331 and 1343.

2.    Venue is proper as the acts complained of occurred in Hopkins County, Texas and are

within this District.

## PARTIES

3.      Plaintiff, JEFFREY A. BENDER (hereafter "Mr. Bender" or "Plaintiff"), is a citizen of the United States and long-term resident of Hopkins County, Texas.  Prior to his arrest on February 24, 2012, Mr. Bender had no arrest record in Hopkins County or the State of Texas.

4.      Defendant PAUL H. FENIMORE (hereafter "Defendant Fenimore"), is a deputy sheriff for Hopkins County Sheriff's Department.  Defendant Fenimore is sued individually for his actions undertaken while in the course and scope of his employment as a peace officer for the Hopkins County Sheriff's Department, and acting under the color of state law.  Defendant Fenimore will be served by private process at his place of business, the Hopkins County Sheriff's Department, 298 Rosemont, Sulphur Springs, Texas, 75482; telephone 903.438.4040.

5.      Defendant GARY K. MCLARRY (hereafter "Defendant McLarry"), is a deputy sheriff and holds the rank of Corporal in the Hopkins County Sheriff's Department.  Defendant McLarry is sued individually for his actions undertaken and failures to act while in the course and scope of his employment as a peace officer for the Hopkins County Sheriff's Department, and acting under the color of state law.  Defendant McLarry will be served by private process at his place of business, the Hopkins County Sheriff's Department, 298 Rosemont, Sulphur Springs, Texas, 75482; telephone 903.438.4040.

6.      Defendant HOPKINS COUNTY, TEXAS (hereafter Defendant "County" or "Hopkins County Sheriff's Department"), is a sub-division of the State of Texas.  Defendant Hopkins County may be served with summons by serving its County Judge, Mr. Chris Brown, Hopkins County Courthouse, 118 Church Street, Sulphur Springs, Texas, 75482, telephone 903.438.4006.

## GENERAL ALLEGATIONS

7.      Mr. Bender alleges generally that Defendant Fenimore unlawfully seized and arrested him on February 24, 2012, and subsequent to being arrested, handcuffed Mr. Bender.  In placing the handcuffs on Mr. Bender, Defendant Fenimore gratuitously placed the handcuffs too tight. The placing of handcuffs without lawful basis for detention or arrest constitutes excessive force; moreover, the placing of the handcuffs too tightly also constitutes excessive force.  After being unlawfully arrest, Mr. Bender was transported to the county jail and then imprisoned.  The imprisonment in the county jail absent lawful reason is a violation of Mr. Bender's constitutional rights.

8.      At all times relevant herein, Defendant Fenimore was acting under color of law, to wit: under the color of the statutes, ordinances, regulations, policies, customs, and usages of HOPKINS COUNTY and the State of Texas.  Defendant Fenimore's actions complained of constitute an abuse of power held uniquely because of a state position and the result solely of an explicit invocation of his governmental authority.

9.      Mr. Bender alleges generally that Defendant McLarry was present and observed Defendant Fenimore unlawfully arrested Mr. Bender on February 24, 2012.  In particular, that upon the urging of Mr. Bender, Defendant McLarry asked Defendant Fenimore why Mr. Bender was being arrested and Defendant Fenimore replied "refusing to identify".  Defendant McLarry failed to take action to stop the arrest.  Defendant McLarry either knew that Defendant Fenimore's action was unlawful or, was so poorly trained as to the law and his duties as a Texas peace officer and senior ranking deputy that he failed to intervene.  In failing to intervene, Defendant McLarry effectively participated in the unconstitutional acts of Defendant Fenimore.

At all times relevant herein, Defendant McLarry was acting under color of law, to wit: under the color of the statutes, ordinances, regulations, policies, customs, and usages of HOPKINS COUNTY and the State of Texas as a peace officer.

10.    At the time of the arrest of Mr. Bender by Defendant Fenimore, Defendant Hopkins County and the Sheriff's Department had in place and had ratified policies, procedures, customs, and practices which exhibited manifest indifference to the constitutional rights of persons in Hopkins County in the arbitrary and capricious use of the Failure to Identify statute by Hopkins County Sheriff's Deputies, which caused the violation of Jeffrey Bender's rights.  Said *de facto* policies, procedures, customs, and practices permitted and tacitly encouraged the Sheriff's Deputies to unjustifiably, unreasonably, and in violation of the Fourth and Fourteenth Amendments, to apprehend and seize  individuals when said individuals did not adequately cooperate and respond to demands to produce identification or otherwise questioned the basis for the police officer's demand for identification.

11.    The acts and inactions of the individual defendants were in violation of Mr. Bender's rights as provided under the Fourth and Fourteenth Amendments, U.S. Constitution.  Further, Plaintiff alleges that Defendant Hopkins County is liable for the violations of Mr. Bender's rights as stated above due to its failing to adequately train and/or supervise Defendants Fenimore, McLarry and its other licensed peace officers.  Further, Defendant Hopkins County had, and continues to have, in place and has ratified policies, procedures, customs, and practices which permit the arbitrary and capricious use of the Failure to Identify.

## FACTUAL ALLEGATIONS

12.    At all times relevant, Plaintiff, Mr. Bender, was a resident of Hopkins County, working primarily as a truck/tractor mechanic in a commercial enterprise owned by a member of his

family.  The incident described herein occurred around mid-day of Friday, February 24, 2012, as Mr. Bender was working in a shop opened to the public.

13.     On Friday, February 24, 2012, Deputies Fenimore, Brad Cummings and Gary McLarry arrived and began asking about a repossessed financed vehicle, claiming that it had been stolen. Among the different business ventures the Benders owned or were invested in, Mr. Bender's wife was in business with a used-car dealer.  An issue had apparently come up earlier that day as to whether or not a particular purchaser of a used car had made all the required payments.

14.     The deputies generally approached Mr. Bender and Deputy McLarry began to aggressively question Mr. Bender as to a specific vehicle, stating it had been stolen.  Mr. Bender informed the deputy that he was not aware of any stolen vehicles but that a vehicle had been repossessed.  At no time did the deputies produce or say they had a warrant to search the premises or to arrest Mrs. Bender; notwithstanding, Mr. Bender continued to cooperate with the deputies.

15.     Mr. Bender pointed out that his wife was not there and that he would call her.  Mrs. Bender indicated she would be coming back.  Deputy Fenimore demanded Mr. Bender contact his wife and tell her that she needed to return immediately.  Mr. Bender called his wife and told her that the deputies wanted her to return immediately, and Mrs. Bender responded that she was on her way.  Mr. Bender informed the deputies of the same.  Deputy Fenimore began to scream at Mr. Bender, demanding he call his wife and tell her to get there immediately.  Mr. Bender obliged and called his wife.  Upon learning of the deputy's demand, she responded she was on her way and couldn't go any faster as she was going the speed limit.

16.     Mr. Bender told the deputy of his wife's response and the deputy became further irritated and ordered Mr. Bender to tell his wife she had to get here now.  Mr. Bender then told Defendant

Fenimore that his wife was going as fast as the law permits and that if he wanted her there sooner, to send a unit to escort her back with its lights and sirens. Mr. Bender returned to his work in the garage.

17.    Almost immediately, he heard some noise in the driveway and presumed his wife had arrived.  Shortly thereafter, he again heard a noise and stepped towards the entrance of the shop. Mr. Bender stepped out of the garage, and then saw his wife in handcuffs and being placed into a sheriff's vehicle.  He called out to her and as he did so, Defendant Fenimore saw him and ordered him to leave the area immediately.  As instructed, he returned to the garage.

18.    A few minutes later, Defendant Fenimore was walking towards the shop and he called out to Mr. Bender that he had his wife's purse.  Mr. Bender turned and as he came up to meet Defendant Fenimore, he asked him to not put the purse on the floor but to give it to him. Defendant Fenimore casually tossed Mrs. Bender's purse onto the shop floor.  Mr. Bender, surprised, picked up the purse and as he turned to walk away, told Defendant Fenimore "thanks, thanks a lot."

19.    Defendant Fenimore then followed Mr. Bender and in a raised and angered voice immediately demanded to see Mr. Bender's ID.  Mr. Bender asked why he needed to see his ID.

20.    Defendant Fenimore then, clearly very angry, told Mr. Bender to turn around and put his hands behind his back.  Mr. Bender did as he was told and was handcuffed by Defendant Fenimore. Mr. Bender immediately felt that the cuffs were tight around his wrists and told Defendant Fenimore.  There was no response to his comment.  Mr. Bender was then escorted out of the shop.

21.    Mr. Bender asked if he was under arrest and Defendant Fenimore ignored the question and Defendant Fenimore again asked for his ID.  Mr. Bender asked again whether he was under

arrest.  Again, Defendant Fenimore ignored the request and demanded his ID.  Mr. Bender then told Defendant Fenimore his name and date of birth, assuming he would then be released.  He was not.

22.     Upon being taken to and while standing at a Sheriff's vehicle, Mr. Bender observed Defendant McLarry about 10 feet away and called out for him (Defendant McLarry) to help. Defendant McLarry asked Defendant Fenimore what Mr. Bender was under arrest for, and Defendant Fenimore said "refused to identify."

23.     At this point in time, Mr. Bender's hands and fingers began to tingle and burn.  He again told Defendant Fenimore that the handcuffs were too tight and without checking the handcuffs, Defendant Fenimore told Mr. Bender, no you are fine and walked away.  At no time was Mr. Bender issued a citation or offered to be issued a citation.  He was arrested.

24.     Mr. Bender was transported to the Hopkins County jail and booked-in.  Upon book-in, the sole charge filed was Failure to Identify, a Class C Misdemeanor offense.  Failure to Identify, Texas Penal Code §38.02(a), provides in relevant part that "... (a)  A person commits an offense if he intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information."  TEX. PENAL CODE §38.02(a).  Mr. Bender was never arrested prior to the demand for his identification.

25.     Mr. Bender was placed in a detention cell at the Hopkins County Sheriff's Department jail.  Despite the availability of a magistrate to arraign Mr. Bender, he was not presented for arraignment until the following day, Saturday, February 25, at approximately mid-day.  He was released on a Personal Recognizance bond.  As a result of being charged, Mr. Bender sought the services of an attorney at law.

26.      On March 14, 2012, Mr. Bender appeared for his pre-trial in Hopkins County Justice of

the Peace Court, Place 2.  Mr. Bender, represented by counsel, met with the representative of the

County Prosecutor's office.  At that time, counsel for Mr. Bender asked to confirm that the sole

charge against Mr. Bender was the Failure to Identify, and it was confirmed by the County

Attorney's representative.  Mr. Bender's counsel provided a copy of the Penal Code section on

Failure to Identify and requested that the misdemeanor charge against Mr. Bender be dismissed

in the interest of justice. The representative responded that Mr. Bender should have given the

officer his ID.  When pointed out that that was not the issue, the representative then stated that

they could not as they did not know what additional charges were to be brought against Mr.

Bender.  When it was pointed out that there needed to be an arrest preceding the request for

identification, the representative then responded that they could not dismiss the charges as they

didn't know what charges may be brought against Mr. Bender's wife.  Again, when pointed out

that that was not relevant to Mr. Bender's charges, the representative pushed the copy of the

provided section of the Penal Code back to Mr. Bender's counsel and stated that they would see

and re-schedule him for another pre-trial.  To date, Mr. Bender's case is pending for a pre-trial

setting.

27.      Upon information and belief, the Hopkins County Sheriff's Department permits its

deputies to arrest and jail individuals on the charge of Failure to Identify, a Class C

Misdemeanor, without there being an arrest preceding the demand for identification.  The arrest

and imprisonment of individuals without satisfying the prerequisites of Tex. Penal Code

§38.02(a) is so common as to constitute a practice and custom of the Hopkins County Sheriff's

Department, and the acceptance by the Sheriff of Hopkins County Sheriff's Department these

practices and customs constitutes ratification of these unconstitutional acts by the Sheriff.

28.     Upon information and belief, the Hopkins County County Prosecutor prosecutes charges against individuals who are charged with a Class C Misdemeanor, without there being a preceding arrest to the demand for identification.  Again, upon information and belief, charges for the Class C Misdemeanor are dismissed prior to trial if the accused is represented by counsel. However, the charge for the Class C Misdemeanor is pursued to trial or plea against the accused if he or she is not represented by counsel.  The disparity in treatment between those accused who are represented by counsel and those who appear *pro se* suggest that there is selective enforcement of the law and thus a further denial of due process for those who are not represented by counsel.

29.     Upon information and belief, as of April 1, 2012, there were approximately nine (9) individuals who were being prosecuted for the charge of Failure to Identify without any prior arrest being made consistent with the law.

## CAUSES OF ACTIONS, DAMAGES, AND RELIEF

30.     Plaintiff incorporates by reference all factual allegations of paragraphs 6 through 28 above as though fully set forth at length herein, and asserts that the same are moving factors which have resulted in the violation of Jeffrey A. Bender' civil rights.

31.     42 U.S.C. §1983 creates a private right of action for redressing constitutional violations by those acting under color of state law.  *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994).  The actions of Defendants Fenimore and McLarry violated the well-established Fourth and Fourteenth Amendment rights to be free from unreasonable seizures, to include unlawful detention, unlawful arrest and the use of excessive force.  Mr. Bender also suffered false imprisonment as a result of his unlawful arrest and asserts a claim under Texas law.  In addition, the continued efforts to prosecute individuals by Hopkins County despite the

Plaintiff's Original Complaint                                                     Page 9

knowledge that the charges are without merit results in a denial of due process to the accused. These rights were clearly established at the time of the assault on Mr. Bender, and Defendants Fenimore and McLarry were aware of these rights as well.

32.    Hopkins County Sheriff's Department has in place and had ratified policies, procedures, customs, and practices which exhibit manifest indifference to the constitutional rights of the persons in Hopkins County by the arbitrary and capricious misuse of the Failure to Identify statute.  The long-standing existence of the practice and custom to arrest, use excessive force and/or imprison individuals on the charge of Failure to Identify, without meeting the statutory prerequisites of an arrest, is without excuse and the result of intentional and/or malicious actions on the part of the Sheriff's Department and its deputies.   The policies, procedures, customs, and practices of the Hopkins County Sheriff's Department are responsible, at least in part, for the plaintiff's constitutional deprivations

33.    Defendant Fenimore's actions could have been prevented had he been adequately trained as to Departmental values and ethics, the meaning and application of Section 38.02 of the Texas Penal Code, the appropriate use of force consistent with the circumstances and/or be held accountable for his conduct by fellow deputies and supervisor(s) with whom he had contact.

34.    Similarly, Defendant Fenimore's actions could have been prevented if Defendant McLarry, a corporal, had intervened to halt the arrest, noting the lack of an arrest as a condition precedent to arresting Mr. Bender.

35.    Upon information and belief, the Hopkins County Sheriff's Department's Human Resources and general personnel system conceals rather than discloses questionable and/or illegal conduct, as well as activities leading to constitutional violations. The direct consequence is that conduct which leads to constitutional violations is not disclosed, individuals involved not

held accountable and this results in continued constitutional violations and systemic failures of accountability which ratify and perpetuate the unlawful conduct.  This includes but is not limited to the failure of the Sheriff's Department to log, track and investigate complaints of abuse by its peace officers.

36.    At all times relevant to this complaint, Defendants Fenimore and McLarry, as deputy sheriffs of the Hopkins County Sheriff's Department, were acting under the direction and control of the Hopkins County's Sheriff's Department.  Defendants Fenimore and McLarry were acting pursuant to a practice, custom, and/or usage of Defendant Hopkins County and its Sheriff's Department.

37.    Upon information and belief, deputies of the Hopkins County Sheriff's Department routinely arrest individuals for Failure to Identify if the individual either does not respond to a request for identification or if the individual does not have a driver's license or identification card.

38.    Acting under color of State law, by and through the policy makers of Defendant Hopkins County and pursuant to practices, customs and/or usage of the Hopkins County Sheriff's Department, defendant Hopkins County intentionally, knowingly, recklessly, and/or with deliberate indifference to the rights of the inhabitants of Hopkins County, failed to adequately train and supervise, on a continuing basis, Defendants Fenimore and McLarry in the performance of their duties to refrain from or to halt other deputies from:

   a.    Violating the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and Laws of the United States;

   b.    Demanding identification contrary to the laws of the State of Texas and the United States of America; and

    c.    Otherwise depriving citizens of their constitutional and statutory rights, privileges, and immunities.

39.    Defendant Hopkins County, through its employees, agents and those whose edicts and/or acts may fairly be said to represent official policy, directly or indirectly and through their actions and inactions, under color of State law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Fenimore heretofore described by its permitting the practice and/or custom of arresting, using unlawful force, imprisoning and persisting in prosecuting individuals as described herein. This is evinced by the failure of Defendant McLarry to intervene and the continued efforts at prosecuting Mr. Bender.

## DAMAGES

40.    Due to the wrongful acts of Defendants Fenimore, McLarry and Hopkins County, Mr. Bender was caused to suffer physical pain and suffering and mental anguish as a result of this experience. Furthermore, the wrongful acts of Defendants caused Mr. Bender to be falsely imprisoned and incur significant expenses in protecting his Constitutional rights. The actions by Defendant Fenimore were carried out with a blatant disregard for Mr. Bender's rights. Consequently, Mr. Bender seeks exemplary damages from Defendant Fenimore in an amount as may be found to be proper under the facts and circumstances of this case.

41.    Plaintiff is entitled to damages pursuant to 42 U.S.C. §1983.

42.    For violations of rights guaranteed to the Plaintiff as set forth above and for false imprisonment, Plaintiff sues Defendant Fenimore for $35,000 or a sum as considered appropriate by the trier of fact.

43.     For violations of rights guaranteed to the Plaintiff as set forth above and for false imprisonment, Plaintiff sues Defendant McLarry for $35,000 or a sum as considered appropriate by the trier of fact.

44.     Plaintiff sues the Defendant Hopkins County for $50,000 or a sum as considered appropriate by the trier of fact for its practices, customs and/or usages and its express failure to prevent the acts complained of herein, and for acquiescing in the same.

45.     Plaintiff would show that the conduct in this matter by Defendant Fenimore was so egregious, intentional, and wanton that exemplary damages should be awarded by the trier of fact.  Plaintiff sues Defendant Fenimore for an amount as may be proven appropriate upon the evidence developed in this action.

46.     Plaintiff seeks such other and further relief, general and special, legal and equitable, to which he may show himself justly entitled.

47.     As a result of the actions of each Defendant, Plaintiff has been required to employ the undersigned attorney to represent him in obtaining the relief requested and Plaintiff requests that this Court enter judgment against Defendants for reasonable attorney's fees and expenses pursuant to 42 U.S.C. §1988 for the services for the undersigned attorney performed and to be performed.

48.     Plaintiff request costs of court.

49.     Plaintiff requests prejudgment interest.

50.     Plaintiff requests post judgment interest.

WHEREFORE, PREMISES CONSIDERED, Mr. Bender, Plaintiff, prays that Defendants answer this Complaint, that this matter be set for hearing for preliminary injunctive

relief, and that this matter be placed upon the district court's civil jury docket.  That Plaintiff obtain all relief, at law or in equity, to which he may be entitled, including an award of compensatory and punitive damages, court costs, and attorney's fees.

Date: _____ day of April, 2012.

Respectfully submitted,

David D. Davis
State Bar No. 00790568

LAW OFFICE OF DAVID D. DAVIS, PLLC
12221 Merit Drive, Suite 670
Dallas, Texas  75251
972.866.9900  Telephone
972.866.9902  Facsimile
ddd@dddavislaw.net